**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 15-1392

CATHERINE BECKWITH,

Appellant

v.

THE PENNSYLVANIA STATE UNIVERSITY, d/b/a PENNSYLVANIA
STATE UNIVERSITY, COLLEGE OF MEDICINE

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Case No. 4-12-cv-00108)
District Judge:  Honorable Matthew W. Brann

Submitted under Third Circuit L.A.R. 34.1(a)
November 7, 2016

Before:  JORDAN, GREENAWAY, JR., and RENDELL, Circuit Judges

(Opinion filed: November 30, 2016)

**RENDELL**, <u>Circuit Judge</u>:

Dr. Catherine Beckwith brought suit against Pennsylvania State University alleging that Penn State breached a six-year employment agreement and violated her right to procedural and substantive due process when it terminated her after little more than two years of employment. The Magistrate Judge recommended granting summary judgment on all three counts. The District Court adopted the Magistrate Judge's report over Beckwith's objections and entered summary judgment for Penn State, from which Beckwith appeals. We will affirm.

## Background

Beckwith began employment as an Associate Professor, a tenure-track faculty position in the Department of Comparative Medicine, on May 1, 2007. Her offer letter stated that the department expected her to devote 75% of her effort to research and the remaining 25% between teaching and administrative activities. It described her position as "tenure-eligible," with tenure being "a six-year process," although "consideration for earlier tenure [was] possible based on [her] performance." A80. Her appointment was also subject to Penn State's policies regarding faculty appointments, including HR23 (which governs tenure review).

---

*  This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Beckwith's tenure review process began in November 2008 when Dr. Ronald Wilson, the chair of her department, asked her to submit paperwork for her promotion and tenure dossier. The dossier included, among other things, a percentage breakout of how Beckwith allocated her time and a narrative statement by Wilson. Beckwith reviewed the dossier for accuracy and signed it, although in her signature statement she wrote, "I do not agree with the Chair's narrative."[1] A222. Then, after successive, independent reviews, the department's Promotion and Tenure Committee recommended that Beckwith continue on tenure track, while Wilson and Dr. Harold Paz, the Dean of the College of Medicine, recommended that she not. Ultimately, the College of Medicine Promotion and Tenure committee agreed with Wilson and Paz and also recommended that she should not continue on tenure track. On April 24, 2009, Paz informed Beckwith that on June 30, 2010 she would be terminated.

Beckwith challenged this review process by filing a petition with Penn State's Faculty Senate Committee on Faculty Rights and Responsibilities ("CFRR"). The CFRR found that Beckwith's review suffered from procedural unfairness and recommended that the dossier "be revised to include statements of the specific expectations within the allocated effort for research consistent with those expectations communicated to

---

[1] Wilson opined that Beckwith had not met expectations. Beckwith was hired as part of the department's effort to produce more research and scholarship. Wilson recognized that some delays beyond Beckwith's control had contributed to her lack of publications after her first year at Penn State. But at the time of her second-year tenure review, he noted that still "no demonstrable work product ha[d] resulted from her research." A209. Moreover, Wilson reported that Beckwith had shown a "pattern of interpersonal conflict with [him] and others," A211, something he believed would "greatly hinder her progress and future performance," A214.

3

[Beckwith] through her letter of offer and the HR-40 review letter." A281. The dossier was then to be recirculated to her reviewers.

In response to the recommendation, a one-page document was added to the dossier that generally set forth how the allocation of effort numbers had been calculated in her original dossier. That document also communicated the expectation that Beckwith was to allocate 75% of her time to research. Beckwith again reviewed the dossier for accuracy, this time adding a lengthier signing statement that challenged "inaccurate content about expectations, reviews, and % effort," and included two direct quotes from Wilson's 2008 annual departmental review (the HR40 review) that had set forth his expectations of Beckwith for the coming year. A294. After recirculation, however, the decisions at all levels of tenure review remained unchanged, and Paz notified Beckwith on January 20, 2010 that she would be terminated on June 30, 2011. Beckwith subsequently filed two unsuccessful petitions with the CFRR challenging this second review.

## Discussion[2]

### A. Procedural Due Process

Beckwith first claims that Penn State did not afford her meaningful due process during her termination. A party who seeks to establish a procedural due process claim must demonstrate that "(1) [she] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property,

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 665 (3d Cir. 2016).

and (2) the procedures available to [her] did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (internal quotation marks omitted). While pre-termination procedures "need not be elaborate" to satisfy the requirements of due process, at a minimum they must grant the employee "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken." *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (alteration in original) (*quoting Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985)). This means the "tenured public employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Id.* (*quoting Loudermill*, 470 U.S. at 546).

We find that Beckwith received adequate pre- and post-termination process in this case. Before her termination, Beckwith had notice of the contents of her dossier, the file that contained the materials on which her peer reviewers would base their decisions. Before the dossier was circulated, Wilson made corrections to the dossier and clarified certain other portions, all at Beckwith's request. Beckwith then had a final opportunity to object to Wilson's narrative in her signing statement. After the initial termination notice, Beckwith successfully challenged this first tenure review, secured additional clarifications, and, after the second review yielded the same result, raised two additional post-deprivation petitions before the CFRR. There is no dispute that Beckwith utilized these opportunities to voice her concerns, nor is there any evidence in the record that Penn State either failed to consider her claims or otherwise violated HR23. Thus, the

District Court properly found Beckwith "ha[d] not presented sufficient evidence to overcome Penn State's assertion that Beckwith was afforded adequate due process." A23.

Beckwith urges on appeal, however, that the dossier clarification did not provide "meaningful" due process because it failed to address some of the CFRR's concerns explicitly. Appellant's Opening Br. 23. Although the CFRR's letter recognized five instances of inconsistent communication of expectations, the District Court found that the "record is . . . clear that Penn State revised Beckwith's dossier in accordance with the [CFRR's] single recommendation." A21. Indeed, the revised dossier quoted expectations regarding required effort directly from her offer letter. Our independent review of the record, moreover, reveals that Beckwith had the opportunity to, and did actually, register her objections to the quality of this revision in her dossier signing statement *before* this revised dossier was recirculated to her reviewers. By quoting language directly from Wilson's HR40 review statement, she added to the dossier some of the expectations she now claims Penn State failed to add itself. This opportunity to "present [her] side of the story" before recirculation, among the many others afforded Beckwith during her tenure review, satisfied the requirements of due process in this case. *See Biliski*, 574 F.3d at 222.[3]

---

[3] Like the District Court, we do not decide whether Beckwith had a protectable due process interest in her employment because, even if she did, we find that she received adequate due process in this case.

**B. Breach of Contract**

Beckwith also argues that Penn State breached her employment agreement by terminating her after little more than two years of employment. In Pennsylvania, there is a presumption of at-will employment. *Murray v. Commercial Union Ins. Co. (Commercial)*, 782 F.2d 432, 435 (3d Cir. 1986) (citing *Geary v. U.S. Steel Corp.*, 456 Pa. 171 (1974)). This presumption can be overcome if, among other things, the plaintiff can show that there was an express contract between the parties for a definite duration or an explicit statement that an employee can only be terminated "for cause." *See Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997). The District Court found that Beckwith failed to show the existence of any agreement of definite duration, and even if she did, that Beckwith could not show Penn State breached this agreement. We agree.

Neither Beckwith's offer letter nor any other document incorporated by reference established a term of years for the agreement. Her offer letter merely noted that Beckwith would be hired in a "tenure-eligible" position. This process of securing tenure would take six years. But HR23, which is incorporated by reference in Beckwith's offer letter and which governs the tenure decision process at Penn State, provides a process a dean must follow if she is "considering termination of a faculty member after any provisional reviews." A107. HR23 also contemplates that this dismissal may occur as early as the "first academic year." A75. In any event, Beckwith has not shown Penn State failed to follow HR23 in discharging her. She was terminated on June 30, 2011 and received

notice of termination on January 20, 2010, more than 12 months in advance. Thus, Beckwith has not met her burden on her contract claim.

### III. Conclusion

For the reasons set forth above, we will AFFIRM the District Court's order granting summary judgment to Penn State.